BRIAN A. SUN (BAR NO. 89410)
PHILLIP R. DI TULLIO (BAR NO. 324267)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone:  (213) 892-9200
Facsimile:   (213) 892-9494
brian.sun@nortonrosefulbright.com
phillip.ditullio@nortonrosefulbright.com

Attorneys for Plaintiff
THE RONALD REAGAN PRESIDENTIAL
FOUNDATION AND INSTITUTE

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RONALD REAGAN PRESIDENTIAL FOUNDATION AND INSTITUTE a California Non-Profit Public Benefit Corporation, <br><br> Plaintiff, <br><br> v. <br><br> POLITICAL MEDIA, INC., a Virginia Corporation; CONSTITUTIONAL RIGHTS PAC, an I.R.S. Code Section 527 Organization; and DOES 1 THROUGH 10, inclusive, <br><br> Defendants. | Case No. 2:21-cv-05327-PA-MAR <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR:** <br> **(1) TEMPORARY RESTRAINING ORDER;** <br> **(2) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; AND** <br> **(3) EXPEDITED DISCOVERY** <br><br> **Judge:**      Hon. Percy Anderson <br> **Hearing:**   TBD <br> **Time:**        TBD <br> **Courtroom:**  9A |

DOCUMENT PREPARED ON RECYCLED PAPER

- 1 -

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................7

II.     FACTUAL BACKGROUND ........................................................................7

    A.    The Reagan Foundation Protects President Reagan's Legacy ..............7

    B.    Defendants' Business Activity..............................................................8

    C.    The Reagan Foundation Unsuccessfully Tried to Stop Defendants'
        Unlawful Conduct—Necessitating This Lawsuit and Application .....11

III.    STANDARD OF REVIEW ........................................................................11

IV.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS ......................12

    A.    Plaintiff is Likely to Succeed on the Merits of Its Claims for
        Infringement and Unfair Competition Under Both State and Federal
        Law......................................................................................................12

        1.    Strength of the Marks ................................................................14

        2.    Relatedness of the Goods ..........................................................15

        3.    Similarity of the Marks and Evidence of Confusion.................15

        4.    Marketing Channels...................................................................16

        5.    Remaining Factors .....................................................................16

    B.    Defendants Engaged in Cyberpiracy in Violation of 15 U.S.C.
        Section 1125........................................................................................17

    C.    Defendants Violated Plaintiff's Right of Publicity Under California
        Civil Code Section 3344.1 ..................................................................18

    D.    Defendants Engaged in Unfair Competition in Violation of California
        Business and Professions Code Section 17200, *et. seq.* ......................18

    E.    Defendants Have No First Amendment Challenge to These Claims ..19

- 2 -

DOCUMENT PREPARED
ON RECYCLED PAPER

V.      PLAINTIFF IS SUFFERING, AND WILL CONTINUE TO SUFFER,
        IMMINENT AND IRREPARABLE HARM IN THE ABSENCE OF A
        TEMPORARY RESTRAINING ORDER ........................................................20

VI.     THE BALANCE OF THE HARDSHIPS AND THE PUBLIC INTEREST
        WILL BE SERVED BY A TEMPORARY RESTRAINING ORDER.........23

VII.    GOOD CAUSE EXISTS FOR EXPEDITED DISCOVERY AND A
        PRESERVATION ORDER ..........................................................................24

VIII.   CONCLUSION ...........................................................................................25

DOCUMENT PREPARED
ON RECYCLED PAPER

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Alliance for Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ................................................................. 12

6

7

*Am. LegalNet, Inc. v. Davis,*
    673 F. Supp. 2d 1063 (C.D. Cal. 2009) .................................................... 24

8

9

*AMF v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979) ........................................................ 13, 14, 15

10

11

*Amoco Prod. Co. v. Vill. of Gambell, Alaska,*
    480 U.S. 531, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987) ........................ 23

12

13

*Browne v. McCain,*
    611 F. Supp. 2d 1062 (C.D. Cal. 2009) .............................................. 20, 22

14

15

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ..................................................................................... 19

16

17

*Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ............................................................................. 19

18

*Comedy III Prods., Inc. v. Gary Saderup, Inc.,*
    25 Cal. 4th 387 (2001) ............................................................................. 18

19

20

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area*
    *Transit Auth.,*
    234 F.R.D. 4 (D.D.C. 2006) ..................................................................... 24

21

22

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,*
    109 F.3d 1394 (9th Cir. 1997) ................................................................. 14

23

24

*Dreamwerks Prod. Grp., Inc. v. SKG Studio,*
    142 F.3d 1127 (9th Cir. 1998) ........................................................... 13, 14

25

26

*E. & J. Gallo Winery v. Gallo Cattle Co.,*
    967 F.2d 1280 (9th Cir. 1992) ........................................................... 14, 15

27

28

- 4 -

DOCUMENT PREPARED ON RECYCLED PAPER

*El Pollo Loco, Inc. v. Hashim*,
  316 F.3d 1032 (9th Cir. 2003)................................................................21

*Ford Motor Co. v. Ultra Coachbuilders, Inc.*,
  2000 WL 33256536, 57 U.S.P.Q.2d 1356 (C.D. Cal. 2000).............................13

*Frehling Enters., Inc. v. Int'l Select Grp., Inc.*,
  192 F.3d 1330 (11th Cir. 1999)................................................................16

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000)........................................................... 14, 15

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*,
  415 U.S. 423, 94 S. Ct. 1113 (1974) .......................................................12

*Grooms v. Legge*,
  2009 WL704644 (S.D. Cal. Mar. 17, 2009)................................................25

*Hawai'i County Green Party v. Clinton*,
  980 F. Supp. 1160 (D. Haw. 1997) ..........................................................12

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enterp., Inc.*,
  559 F.3d 985 (9th Cir. 2009)..................................................................23

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009).................................................................21

*Matrix Motor Co. v. Toyota Jidosha*,
  290 F. Supp. 2d 1083 (C.D. Cal. 2003)................................................ 14, 16

*Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*,
  907 F. Supp. 2d 1086 (N.D. Cal. 2012)......................................................24

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
  208 F.R.D. 273 (N.D. Cal. 2002) ............................................................24

*Shvarts v. Budget Group, Inc.*,
  81 Cal. App. 4th 1153 (2000)................................................................19

*Solano v. Playgirl, Inc.*,
  292 F.3d 1078 (9th Cir. 2002)................................................................19

DOCUMENT PREPARED
ON RECYCLED PAPER

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE*
APPLICATION FOR TEMPORARY RESTRAINING ORDER

*Stuhlbarg Int'l Sales Co. v. John D. Brush and Co.*,
    240 F.3d 832 (9th Cir. 2001) ................................................................. 12, 21

*Synopsys, Inc. v. AzurEngine Tech., Inc.*,
    401 F. Supp. 3d 1068 (S.D. Cal. 2019) ..................................................... 25

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011) ..................................................................... 19

*Volkswagen AG v. Verdier Microbus & Camper, Inc.*,
    2009 WL 928130 (N.D. Cal. Apr. 3, 2009) ............................................... 21

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7, 129 S. Ct. 365 (2008) ................................................. 12, 21, 23

**Rules and Statutes**

15 U.S.C. § 1114 ........................................................................................ 13, 19

15 U.S.C. § 1115(a) ......................................................................................... 13

15 U.S.C. § 1116(a) ......................................................................................... 20

15 U.S.C. § 1125 ................................................................................. 13, 17, 19

Bus. & Prof. Code § 17200 .............................................................................. 18

Bus. & Prof. Code § 17203 ........................................................................ 18, 19

Cal. Civ. Code § 3344.1 ................................................................. 18, 19, 21, 22

Fed. R. Civ. P. 65 ............................................................................................ 12

Fed. R. Civ. P. § 26(d) ..................................................................................... 24

Rule 26(f) ......................................................................................................... 24

**Other Authorities**

First Amendment ........................................................................................ 19, 20

www.reaganfoundation.org .............................................................................. 7

DOCUMENT PREPARED
ON RECYCLED PAPER

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE*
APPLICATION FOR TEMPORARY RESTRAINING ORDER

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff The Ronald Reagan Presidential Foundation and Institute (the "Reagan Foundation") was created by President Reagan to preserve and promote his principles of individual liberty, economic opportunity, global democracy, and national pride.  In order to fund this mission, the Reagan Foundation owns and maintains a number of trademarks related to the former President, as well as his name, image, and likeness, for use in various commercial endeavors.  With the obvious intent of trading on President Reagan's name, legacy, and popularity, Defendants Political Media Inc. ("Political Media") and the Constitutional Rights PAC ("CRPAC") (together "Defendants") recently began using President Reagan's name, image, and likeness to sell domain names and solicit contributions to and memberships in Defendants' purported "Trump Reagan Club".  Despite repeated demands to cease this infringing activity, Defendants persist in using President Reagan's name and likeness and the Reagan Foundation's trademarks to sell its products.  This deliberate effort to use President Reagan to legitimize its products without ever receiving authorization is causing irreparable harm to the Reagan Foundation and must be enjoined.

## II.    FACTUAL BACKGROUND

### A.    The Reagan Foundation Protects President Reagan's Legacy

The Reagan Foundation was created by President Reagan in order to preserve and promote his principles of individual liberty, economic opportunity, global democracy, and national pride.  (Compl. ¶ 11.)  In furtherance of its mission, the Reagan Foundation operates the website located at www.reaganfoundation.org through which it offers various goods and services and promotes the enduring legacy of President Reagan.  (*Id.* ¶ 16.)  The Reagan Foundation uses its website as a means of raising funds and soliciting donations to the Reagan Foundation, including through

DOCUMENT PREPARED ON RECYCLED PAPER

an online gift shop and a retail store at the Reagan Library, both of which sell goods incorporating President Reagan's name and image and other aspects of his persona. (*Id.*)  The substantial revenue derived from these sales helps the Reagan Foundation sustain its mission.  (*Id.*)  Individuals from across the country may access the Reagan Foundation's website, including the online gift shop, to purchase the goods and services offered by the Reagan Foundation.  (*Id.*)

Aware that commercial enterprises and politically motivated persons and entities would attempt to appropriate his name to sell products or imply endorsements, President Reagan took steps to ensure that the Reagan Foundation, as the institution he chose to preserve and protect his legacy, would have the right to protect his name and likeness and prevent unauthorized and unlawful uses.  (*Id.* ¶¶ 11, 12.)  To that end, the Reagan Foundation was granted the exclusive, worldwide right to use President Reagan's name and likeness for any purpose, including commercial purposes, and upon the death of Nancy Reagan, ownership of those rights.  (*Id.* ¶ 12.)  As a result, the Reagan Foundation owns the rights of publicity of President Reagan, including his likeness and name.  (*Id.* ¶ 13.)

Further to the rights granted to it, the Reagan Foundation owns the mark RONALD REAGAN in various stylizations and forms (the "Ronald Reagan Mark") and has multiple trademark registrations for the Ronald Reagan Mark covering a wide array of goods and services, including educational services and charitable fundraising services.  (*Id.* ¶ 17.)  The Reagan Foundation commenced use of the Ronald Reagan Mark in commerce when the Reagan Library opened in 1991.  (*Id.*)  Since that time, The Reagan Foundation has continuously used the Ronald Reagan Mark.  (*Id.*)

### B.    Defendants' Business Activity

Political Media is in the business of political consulting.  (*Id.* ¶ 25.)  Political Media advertises and sells various Internet and social media services, including website design and email services to its clients.  (*Id.*)  CRPAC, a hybrid/super

- 8 -

DOCUMENT PREPARED
ON RECYCLED PAPER

political action committee, is in the business of influencing political issues through "direct action" and information. (*Id.* ¶¶ 3, 26.) Defendants engage in joint-fundraising activities to finance their business activities, including by seeking donations from potential customers made directly to CRPAC (*Id.* ¶¶ 26, 27, 37.) The two entities are essentially one-in-the-same, each acting as the agent for the other. (*Id.* ¶ 4.) For instance, they share the same physical and email addresses, as well as the same president—Lawrence "Larry" Ward. (*Id.*) In addition to Ward, CRPAC's executives include Carter Clews (known as "the godfather" of CRPAC) and Jesse Benton, who serves as its Executive Director. (*Id.* ¶ 26.) Benton formerly served as a long-time advisor to Congressman Ron Paul, and managed campaigns for three U.S. Senators and six members of Congress. (*Id.*) In 2016, however, Benton was convicted on public corruption charges stemming from his bribery of a state senator during the 2012 presidential campaign.[1] (Plaintiff's Request for Judicial Notice in Support of *Ex Parte* Application for Temporary Restraining Order ("RJN"), Ex. A.) Still, Benton has found his way back into the political arena through CRPAC.

CRPAC claims to offer its supporters direct influence on politics and policy by providing support for conservative candidates who espouse their views. (Compl. ¶ 26.) A closer look at CRPAC's public filings with the Federal Election Commission ("FEC"), however, reveals a different story. (RJN, Exs. C – D.) Indeed, CRPAC's 2019-2020 FEC filings show that CRPAC made just over $28,000 in contributions to political candidates despite listing $356,978 in total expenditures. (*Id.*) What's more, in the same fiscal years, CRPAC made $26,103 in payments to Political Media (i.e., Ward) and another $19,012 to Titan Strategies. (*Id.*) Perhaps unsurprisingly, Benton is listed as the president of Titan Strategies. (*Id.*, Ex. E.) The rest of CRPAC's expenditures were paid to other unknown organizations for "administrative" and consulting fees. (*Id.*, Ex. C.) In short, despite its lofty ideals,

---

[1] Interestingly, Benton was pardoned by President Trump just before the end of his term on December 23, 2020. (RJN, Ex. B.)

DOCUMENT PREPARED ON RECYCLED PAPER

1  CRPAC seems more interested in self-dealing than actual political efficacy.

2  It comes as no surprise then that CRPAC sought legitimacy by associating
3  itself with admired Republican leaders such as President Reagan.  (Compl. ¶¶ 39 –
4  41.)  CRPAC hoped that by being associated with pillars of the Republican party, it
5  could capitalize on their legacy and influence in order to raise additional funds and
6  further fill the coffers of CRPAC's executives—Ward and Benton, specifically.  For
7  example, on August 1, 2019 and April 15, 2021, respectively, Defendants registered
8  the domain names "trumpreagan.com" and "trumpreagan.us."  (*Id*. ¶ 30.)  In or
9  around June 2021, Defendants started using these domain names to direct to a website
10 identified as a purported "Trump Reagan Club" and sell @trumpreagan email
11 addresses to customers who make certain contributions to Defendants and a
12 membership in this "Trump Reagan Club".  (*Id*. ¶¶ 29 – 34.)  Just like CRPAC, this
13 "Trump Reagan Club" website identifies Ward, Benton and Clews as the primary
14 actors. (*Id*. ¶ 29.) The Reagan Foundation was unaware of Defendants' trademark
15 infringement until on or around June 10, 2021, when it was alerted that Defendants
16 had sent an advertisement through an email purporting to be a newsletter.  (*Id*. ¶ 28.)
17 This email was sent out nationwide, including to residents of California and at least
18 one employee of the Reagan Foundation who resides in California.  (*Id*. ¶¶ 28, 36.)
19 The email solicited monthly donations in order to join the "Trump Reagan Club."
20 (*Id*.)  Defendants are not, and never were, authorized to use the Reagan name or
21 image in connection with these solicitations.  (*Id*. ¶ 45.)  In other words, Defendants
22 are unlawfully infringing upon the Ronald Reagan Mark, and using President
23 Reagan's name and likeness, for commercial purposes without authorization from
24 the Reagan Foundation, the rightful owner of each.  After investigating, the Reagan
25 Foundation discovered that each of these commercial campaigns—the advertisement
26 appearing in the email newsletter email advertisement and the Trump Reagan Club
27 website—were linked directly to CRPAC and Political Media.  (*Id*. ¶ 37.)

28

DOCUMENT PREPARED
ON RECYCLED PAPER

**C.** **The Reagan Foundation Unsuccessfully Tried to Stop Defendants' Unlawful Conduct—Necessitating This Lawsuit and Application**

After learning of Defendants' unlawful activity, the Reagan Foundation made repeated requests that Defendants immediately cease this conduct.  Specifically, Linda Merritt, counsel for the Reagan Foundation, sent a formal cease and desist letter to Ward on June 11, 2021, submitted a message on the "Contact" page of the Trump Reagan Website on June 19, 2021, and sent a follow up email to Ward, Benton, and Clews on June 26, 2021.  (Declaration of Linda M. Merritt in Support of Plaintiff's *Ex Parte* Application for Temporary Restraining Order ("Merritt Decl."), ¶¶ 3 – 5.)  Christopher Woodfin of Woodfin Law Office PLLC finally responded on behalf of CRPAC on June 28, 2021, promising that he would contact counsel for the Reagan Foundation to discuss Defendants' conduct. (*Id.*)  He never did. (Declaration of Brian A. Sun in Support of Plaintiff's *Ex Parte* Application for Temporary Restraining Order ("Sun Decl."), ¶ 4.)  Brian Sun, also counsel for the Reagan Foundation, sent multiple follow up communications to Mr. Woodfin.  (Sun Decl., ¶¶ 5 – 8.)  Finally, on June 30, 2021, counsel for the Reagan Foundation informed Mr. Woodfin and Political Media that the Reagan Foundation intended to file this Application, and, pursuant to the Standing Order of this Court, asked whether Defendants would oppose it.  (*Id.* ¶ 8.)  Instead of responding to the query whether Defendants would oppose this Application, Mr. Woodfin again asked for additional time to respond.  (*Id.* ¶ 9.)  Faced with ongoing irreparable damage being caused to President Reagan's legacy, as well as Defendants' continuing stalling tactics, the Reagan Foundation had no choice but to file this Application.  (*Id.*)  As of the time of filing this Application, neither Mr. Woodfin, nor any other representative of Defendants, have indicated whether they intend to oppose this Application.  (*Id.*)

## III.   STANDARD OF REVIEW

A temporary restraining order should issue in this case.  "A temporary

DOCUMENT PREPARED ON RECYCLED PAPER

restraining order is restricted to its 'underlying purpose of preserving the *status quo* and preventing irreparable harm just so long as it is necessary to hold a hearing, and no longer.'" *Hawai'i County Green Party v. Clinton*, 980 F. Supp. 1160, 1163 (D. Haw. 1997) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439, 94 S. Ct. 1113, 1124 (1974)). The analysis for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

To obtain a temporary restraining order or a preliminary injunction, the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Fed. R. Civ. P. 65; *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008). In addition, the Ninth Circuit has held that its "serious questions" version of the sliding scale test for preliminary injunctions "remains viable after the Supreme Court's decision in *Winter*." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). In so ruling, the Ninth Circuit formulated its revised sliding scale test as follows: ". . . [s]erious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135.

## IV. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

### A. Plaintiff is Likely to Succeed on the Merits of Its Claims for Infringement and Unfair Competition Under Both State and Federal Law

Plaintiff seeks a temporary restraining order on the basis of its claims for federal trademark infringement and unfair competition under state and federal law.

- 12 -

DOCUMENT PREPARED ON RECYCLED PAPER

First, 15 U.S.C. § 1114 prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services [when] such use is likely to cause confusion, or to cause mistake. . . ." Second, 15 U.S.C. § 1125(a) prohibits the use in commerce of "any word, term, name, symbol, or device," which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . ." A federal registration of a trademark serves as "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark. . . ." 15 U.S.C. § 1115(a).

To establish a likelihood of success on these claims, Plaintiff bears the burden of demonstrating that Defendants are "using a mark confusingly similar to a valid, protectable trademark of [plaintiff's]." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1046 (citing *AMF v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)).  Because Plaintiff's state law claims mirror its federal claims, the analysis is the same for all of Plaintiff's claims at issue. *See Ford Motor Co. v. Ultra Coachbuilders, Inc.*, 2000 WL 33256536, 57 U.S.P.Q.2d 1356, 1359-60 (C.D. Cal. 2000). Defendants cannot dispute that Plaintiff is the owner of the valid Ronald Reagan Mark, and that Plaintiff is the senior user of the Ronald Reagan Mark.

The Ninth Circuit applies the eight-factor *Sleekcraft* test to determine whether a likelihood of confusion exists.  599 F.2d 348-49.  The factors are: (1) the strength of the plaintiff's mark; (2) the relatedness or proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the degree to which the parties' marketing channels converge; (6) the type of goods and degree of care purchasers are likely to exercise in selecting the goods; (7) evidence of the defendant's intent; and

(8) the likelihood that the parties will expand their product lines. *Id.* The factors "should not be rigidly weighed," *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998), but are instead "intended to guide the court in assessing the basic question of likelihood of confusion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). The likelihood of confusion test considers whether "the similarity of the marks is likely to confuse customers about the source of the products." *Id.* Close cases should be resolved in favor of the senior user of the mark—here, Plaintiff. *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1404 n. 14 (9th Cir. 1997).

### 1.  <u>Strength of the Marks</u>

A mark's strength is based on its conceptual strength and strength in the marketplace. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). Defendants cannot reasonably dispute that Plaintiff's mark is commercially strong. Conceptual strength, in turn, depends on the mark's characterization: the strongest marks are "arbitrary" ones and "suggestive" marks; the weakest are "descriptive" and "generic" marks. *See Sleekcraft*, 599 F.2d at 349. Weaker marks are afforded less protection than strong ones, with generic marks afforded no protection at all. *See Matrix Motor Co. v. Toyota Jidosha*, 290 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003). In addition, "in situations in which the appearance of the conflicting marks and the services provided are almost identical, the strength of the mark is of diminished importance in the likelihood of confusion analysis." *GoTo.com*, 202 F.3d at 1208.

Plaintiff's mark is a strong, arbitrary, and inherently distinctive and serves to identify and indicate the source of the Reagan Foundation's products and services to the consuming public. (Compl. ¶ 18.) As a result of the long use and promotion of the Ronald Reagan Mark by the Reagan Foundation, the Ronald Reagan Mark has become distinctive to designate the Reagan Foundation, and to distinguish the

DOCUMENT PREPARED
ON RECYCLED PAPER

Reagan Foundation and its products and services from those of other businesses.  (*Id.* ¶ 19.)  As a result of these efforts by the Reagan Foundation, the consuming public in California and throughout the United States widely recognizes and associates the Ronald Reagan Mark with the Reagan Foundation and its diverse offering of products and services.  (*Id.*)  In all, this factor strongly favors Plaintiff.

## 2.    Relatedness of the Goods

Where goods are related or complementary, the danger of consumer confusion is heightened.  *Gallo*, 967 F.2d at 1291.  To be related, goods do not have to be identical.  Rather, they must only be "reasonably thought by the buying public to come from the same source if sold under the same mark."  *Sleekcraft*, 599 F.2d at 350.  Here, Defendants are trading off the exact image, name, and reputation of President Reagan protected by Plaintiff's trademark, which is strong *prima facie* evidence that the parties' goods are related.  Further, Defendants are using President Reagan's image and name to insinuate that Defendants' products and message are approved of by Plaintiff.  (Compl. ¶ 39.)  This factor, therefore, strongly favors Plaintiff.

## 3.    Similarity of the Marks and Evidence of Confusion

To address the similarity of the marks, a court considers the "sight, sound, and meaning" of the marks, taking into consideration how the marks are encountered in the marketplace.  *Sleekcraft*, 599 F.2d at 351; *GoTo.com*, 202 F.3d at 1205-06.  Similarities are to be "weighed more heavily than differences."  *GoTo.com*, 202 F.3d at 1206.  In addition, where the parties offer competing goods, a lower level of similarity will suffice to support a finding of a likelihood of confusion.  *Sleekcraft*, 599 F.2d at 350.  Further, although "evidence that the use of the two marks has already led to confusion is persuasive proof that future confusion is likely," the absence of such evidence is not determinative.  *GoTo.com,* 202 F.3d at 1208.  Here, Defendants are raising money for their business activities by soliciting donations in

DOCUMENT PREPARED
ON RECYCLED PAPER

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

order to join the so-called "Trump Reagan Club." (Compl. ¶¶ 34, 38.) Defendants' use of President Reagan's name and image in connection with the Trump Reagan Website and Defendants' business activities and sale of email addresses is knowing and clearly intended to foster an association with President Reagan and to create the impression on the part of potential customers that Defendants' products and services are endorsed by the Reagan Foundation as the owner of President Reagan's name and image. (*Id.* ¶¶ 39 – 42.) In short, Defendants' "Trump Reagan Club" clearly uses President Reagan's name to raise funds for its business activities—supporting a finding of a likelihood of confusion. This factor favors Plaintiff.

### 4.    **Marketing Channels**

This factor is concerned with "where, how, and to whom the parties' products are sold." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1339 (11th Cir. 1999). Other relevant considerations include the parties' "advertising, the existence of direct competition, and retail distribution." *Matrix*, 290 F. Supp. 2d at 1094. The parties in this case share some of these characteristics in common. Plaintiff uses the Ronald Reagan trademark for a wide array of goods and services, including educational services and charitable fundraising services. (Compl. ¶¶ 11, 12.) Defendants similarly use internet advertising and marketing to sell goods and conduct fundraising for their political business activities. Because of the similarity in the parties' distribution channels, this factor favors Plaintiff.

### 5.    **Remaining Factors**

The remaining factors also support Plaintiff's claims. First, the "exercise of care" factor favors Plaintiff. The parties' goods are highly similar and operating in the same marketplace so that consumers would not exercise sufficient care in making their purchases. Second, the fact that Defendants named its politically-themed fundraising and marketing campaign the "Trump Reagan Club," is evidence of its intent to capitalize on President Reagan's established name and reputation. (Compl.

DOCUMENT PREPARED ON RECYCLED PAPER

¶¶ 39 – 42.)  The intentionality factor thus weighs in Plaintiff's favor.  Third, both parties already provide virtually identical goods in the same areas—politically-related fundraising and marketing—which is sufficient to render the question of expansion moot.  This factor therefore favors Plaintiff as well.

Weighing the factors above, Plaintiff has demonstrated a substantial likelihood of success on its claims for trademark infringement and unfair competition.  All of the factors considered above weigh in Plaintiff's favor, some strongly so, supporting the conclusion that Defendants are liable for infringing Plaintiff's protected mark.  Because Plaintiff is likely to succeed on the merits, the Court must address the other considerations for a grant of injunctive relief, which also favor Plaintiff.

**B.    Defendants Engaged in Cyberpiracy in Violation of 15 U.S.C. Section 1125**

To establish a claim for cyberpiracy under the Lanham Act, Plaintiff must show that (1) Defendants have registered, trafficked in or used a domain name, (2) which is identical or confusingly similar to a mark owned by the plaintiff, (3) the mark was distinctive at the time of Defendants' registration of the domain name, and (4) Defendants have committed the acts with a bad faith intent to profit from Plaintiff's mark.  15 U.S.C. § 1125(d).

For similar reasons as discussed above with respect to Plaintiff's infringement claims, Plaintiff has demonstrated a substantial likelihood of success on its claims for cyberpiracy.  Specifically, Defendants registered the "trumpreagan.com" and "trumpreagan.us" domain names, which incorporate the Reagan name and are confusingly similar to the Ronald Reagan Mark.  Further, the Ronald Reagan Mark was inherently distinctive and serves to identify and indicate the source of the Reagan Foundation's products and services to the consuming public.  Finally, Defendants registered these domains with the bad faith intent to profit from them by fostering an association with President Reagan and to create the impression on the part of

potential customers that Defendants' products and services are endorsed by the Reagan Foundation as the owner of President Reagan's name and image. (Compl. ¶¶ 39 – 42.)

## C. Defendants Violated Plaintiff's Right of Publicity Under California Civil Code Section 3344.1

California law makes liable any person who, without consent, uses a deceased personality's name, voice, signature, photograph, or likeness either (1) on or in a product, or (2) in advertising or selling a product. Cal. Civ. Code § 3344.1; *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 395 (2001).

Here, as described in more detail above, Defendants are raising money for their business activities by using President Reagan's name and image in connection with the Trump Reagan Club website through the sale of email addresses with the trumpreagan.com and trumpreagan.us domain names. (Compl. ¶¶ 39 – 42.) Defendants marketing efforts are intentionally aimed at fostering an association with President Reagan and creating the impression on the part of potential customers that Defendants' products and services are endorsed by the Reagan Foundation as the owner of President Reagan's name and image. (*Id.*) As such, Plaintiff has demonstrated a likelihood of success on its claim that Defendants are using President Reagan's name, photograph, and likeness in selling a product under California Civil Code section 3344.1.

## D. Defendants Engaged in Unfair Competition in Violation of California Business and Professions Code Section 17200, *et. seq.*

Defendants' use of Plaintiff's trademark, name, and likeness also gives rise to liability under the Unfair Competition Law ("UCL"). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Bus. & Prof. Code §§ 17200, 17203. Regarding the "unlawful" prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes

DOCUMENT PREPARED ON RECYCLED PAPER

1  independently actionable." *Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*,

2  20 Cal. 4th 163, 180 (1999).  Regarding the "unfair" prong, "[t]he test of whether a

3  business practice is unfair involves balancing the utility of the defendant's conduct

4  against the gravity of the alleged victim's harm." *Shvarts v. Budget Group, Inc.*, 81

5  Cal. App. 4th 1153, 1158 (2000).  Injunctive relief and restitution for all profits

6  Defendants have gained through their conduct is available for unfair competition

7  claims.  Bus. & Prof. Code § 17203.

8       Defendants' liability under the UCL's "unlawful" prong is established based

9  on their violation of the Lanham Act (15 U.S.C. §§ 1114 and 1125) which prohibits

10  trademark infringement, and California Civil Code section 3344.1 which prohibits

11  unauthorized use of a deceased person's name and likeness for commercial purposes.

12  Defendants' infringement on Plaintiff's trademarks and unauthorized use of

13  Plaintiff's name and likeness for commercial purposes is unlawful under the above

14  provisions and therefore violate the UCL.  The same conduct also creates liability for

15  Defendants under the UCL's "unfair" prong.    Defendants' actions threaten

16  irreparable harm to Plaintiff, as discussed further below.  The Reagan Foundation is

17  therefore likely to prevail on both the unlawful and the unfair prongs of this claim.

18       **E.    <u>Defendants Have No First Amendment Challenge to These Claims</u>**

19       Generally, political expression and speech uttered during a campaign for

20  public office enjoys broad First Amendment protection. See *Buckley v. Valeo*, 424

21  U.S. 1, 14 (1976).  If, however, such speech is false or misleading, it enjoys

22  diminished protection. *See generally Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1089

23  (9th Cir. 2002).  Further, courts routinely grant injunctions prohibiting deceptive

24  advertising.  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 (9th Cir.

25  2011) (regarding actions brought under the Lanham Act).    Because false, or

26  misleading commercial statements are not protected speech, such injunctions rarely

27  raise First Amendment concerns.  *Id.*, at 829-30.

28

Here, any argument advanced by Defendants that their use of the Ronald Reagan Mark and President Reagan's name and likeness is protected by the First Amendment is untenable. The First Amendment's broad protection for political expression does not bar, as a matter of law, all actions based on allegedly improper use of a person's identity or other protected interests in campaign-related materials. *Browne v. McCain*, 611 F. Supp. 2d 1062, 1072 (C.D. Cal. 2009). That Defendants' solicitations are tangentially related to politics does not entitle them to a blanket protection under the First Amendment. These advertisements soliciting funds to the CRPAC are not political speech under the First Amendment, particularly when the advertisements illegally infringe on the Ronald Reagan Mark and appropriate President Reagan's name and likeness without authorization. *See id* (finding that the mere fact that a performance artist's song was used in the context of a political campaign does not bar the artist's claim for violation of the right of publicity, particularly when the use of the song gave the misleading impression that the artist supported the candidate). Thus, Defendants will not be able to meet their burden of establishing that the First Amendment bars, as a matter of law, Plaintiff's claim.

## V. PLAINTIFF IS SUFFERING, AND WILL CONTINUE TO SUFFER, IMMINENT AND IRREPARABLE HARM IN THE ABSENCE OF A TEMPORARY RESTRAINING ORDER

Defendants' harmful conduct can be split into two distinct categories: infringement of Plaintiff's trademarks (including through cyberpiracy), and unauthorized use of President Reagan's name and likeness to raise money for their commercial business activities. A temporary restraining order is necessary to prevent irreparable harm to Plaintiff in each instance. First, as discussed above, Plaintiff has shown that it is likely to succeed on the merits of its infringement claims. Under 15 U.S.C. § 1116(a), Plaintiff is entitled to a presumption that it suffered irreparable harm upon a finding of unfair competition as a result of infringement. Further, courts

have repeatedly found that losing control of one's reputation and goodwill in the marketplace supports the issuance of an injunction.  *See, e.g.*, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Volkswagen AG v. Verdier Microbus & Camper, Inc.*, 2009 WL 928130, at *6 (N.D. Cal. Apr. 3, 2009).  In the Ninth Circuit, in a trademark proceeding, after *Winter*, "'irreparable injury may be presumed from a showing on the likelihood of success on the merits.'"  *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (quoting *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003)).  Accordingly, having shown that it is likely to succeed on the merits of its infringement claims under the Lanham Act, Plaintiff  is presumed to have suffered irreparable harm and this Court should enjoin Defendants' actions complained of herein.

Second, Plaintiff has shown that it is likely to succeed on the merits of its claim that Defendants violated Plaintiff's right of publicity under California Civil Code section 3344.1.  The Reagan Foundation was created in order to preserve and promote President Reagan's principles of individual liberty, economic opportunity, global democracy, and national pride.  (Compl. ¶ 11; Declaration of Jerry Zuk in Support of Plaintiff' *Ex Parte* Application for Temporary Restraining Order ("Zuk Decl." ¶ 2.)  Aware that commercial enterprises and politically motivated persons and entities would attempt to appropriate his name to sell products or imply endorsements, President Reagan took steps to ensure that the Reagan Foundation, as the institution he chose to preserve and protect his legacy, would have the right to protect his name and likeness and prevent unauthorized and unlawful uses.  (*Id.*)  To that end, the Reagan Foundation was granted the exclusive, worldwide right to use President Reagan's name and likeness for any purpose, including commercial purposes, and upon the death of Nancy Reagan, ownership of those rights.  (Compl.

DOCUMENT PREPARED ON RECYCLED PAPER

¶ 12; Zuk ¶ 3.)  As a result, the Reagan Foundation owns the rights of publicity of President Reagan, including his likeness and name, recognized under California law, including Cal. Civ. Code § 3344.1, and any other state, federal, or foreign law. (Compl. ¶ 13; Zuk ¶¶ 4, 5.)

Here, Defendants are using President Reagan's name and likeness to raising money for their business activities.  (Compl. ¶¶ 39 – 43.)  Defendants' conduct is knowingly and intentionally aimed to foster an association with President Reagan and to create the impression on the part of potential customers that Defendants' products and services are endorsed by the Reagan Foundation as the owner of President Reagan's name and image.  (*Id.*; Zuk Decl. ¶ 12.)  Because the Reagan Foundation's chief aim is to protect President Reagan's legacy by protecting the very name and likeness Defendants are using without consent, Plaintiff has no adequate remedy at law that could sufficiently protect that legacy if Defendants' illegal conduct is not enjoined.  (*Id.*)  *See McCain*, 611 F. Supp. 2d at 1070-71 (finding that a political candidate's use of an performing artist's song, without first obtaining consent, "gave the false impression that he was associated with or endorsed [the] candidacy" sufficient to establish harm under a claim for a right of publicity).

Third, even if Plaintiff was able to get an appropriate remedy at law in the form of restitution of all of Defendants' ill-gotten profits, those profits likely unrecoverable.  Political Media and CRPAC are essentially alter egos of each other, sharing the same physical and email addresses, the same president, and are both financed by joint fundraising efforts.  The funds raised by their solicitations are disbursed to their various vendors and other organizations which charge administrative and consulting funds.  In other words, any profits earned by Defendants through their infringement are probably already disbursed and thus unavailable for recovery.  Further, as discussed above, Defendants have a checkered past when it comes to money in politics.  Specifically, Benton was convicted of on

public corruption charges stemming from his bribery of a state senator during the 2012 presidential campaign. That Defendants' current scheme seems to be yet another political grift adds to the urgency through which the Reagan Foundation must act to prevent further harm.

Finally, it is clear that without a temporary restraining order, and ultimately an injunction, Defendants will not cease their illegal use of the Ronald Reagan Mark and President Reagan's name and likeness. The Reagan Foundation has repeatedly reached out to Defendants to request that they remove all advertisements, promotions, or solicitations containing the Ronald Reagan Mark and President Reagan's name and likeness. (Merritt Decl. ¶¶ 3 – 5; Sun Decl. ¶¶ 5 – 8 .) Each request, made on 11, 19, 26, 28, 29 June 2021, was completely ignored by Defendants. (*Id.*) It is clear that Defendants will not willingly cease this infringement unless ordered to do so by this Court. For these reasons, Plaintiff has shown that it will suffer irreparable harm if a temporary restraining order is not issued.

## VI.    THE BALANCE OF THE HARDSHIPS AND THE PUBLIC INTEREST WILL BE SERVED BY A TEMPORARY RESTRAINING ORDER

"In each case, a court must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987). Defendants cannot articulate how any harm it will potentially suffer is greater than the harm to Plaintiff's business, goodwill, and reputation, as detailed above. In addition, the Court must consider the public interest in enjoining a Defendants' conduct. *Winter*, 555 U.S. at 32. "The usual public interest concern in trademark cases [is] avoiding confusion to consumers." *Internet Specialties West, Inc. v. Milon-DiGiorgio Enterp., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009). Here, the substantial likelihood of consumer confusion supports the issuance of a preliminary injunction, in the interest of avoiding future instances of confusion. Accordingly, the

DOCUMENT PREPARED ON RECYCLED PAPER

balance of the hardships and the public interest factors tip in Plaintiff's favor.

## VII.   GOOD CAUSE EXISTS FOR EXPEDITED DISCOVERY AND A PRESERVATION ORDER

Good cause exists for leave to conduct expedited discovery, as requested in the Proposed Order.  *See* Fed. R. Civ. P. § 26(d).  Federal Rule of Civil Procedure 26(d) allows for discovery prior to a Rule 26(f) conference.  "In the Ninth Circuit, courts use the 'good cause' standard to determine whether discovery should be allowed to proceed prior to a Rule 26(f) conference." *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012).  "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).  "It should be noted that courts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition." *Id.*   "Factors commonly considered in determining the reasonableness of expedited discovery include, but are not limited to: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009) (quoting *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006)).  Taken as a whole, these factors tip toward permitting expedited discovery here.

First, a preliminary injunction has not yet been issued, and this limited discovery will be needed before the preliminary injunction can be fully briefed and its proper scope can be determined by the Court.  Also, the purpose of the discovery—which would take the form of limited interrogatories, document requests, and depositions—is to ensure that (1) electronic evidence that is material to this

DOCUMENT PREPARED
ON RECYCLED PAPER

litigation is not altered, deleted, destroyed, or otherwise lost in the ordinary course of Defendants' business, (2) that funds made by Defendants by using the Ronald Reagan Mark or name and likeness of President Reagan would be diverted before discovery could commence, and (3) that Defendants immediately identify and remove all advertisements, solicitations, or newsletters containing the Ronald Reagan Mark or the name and likeness of President Reagan. *See Grooms v. Legge*, 2009 WL704644, at \*12 (S.D. Cal. Mar. 17, 2009) (granting application for temporary restraining order and request for expedited discovery where plaintiffs raised concerns that funds would be diverted without immediate discovery). Further, the burden on Defendants is minimal because Defendants would be required to provide this information in the normal course of discovery regardless, and the inquiry can be conducted during normal business hours. *See Synopsys, Inc. v. AzurEngine Tech., Inc.*, 401 F. Supp. 3d 1068, 1077 (S.D. Cal. 2019) (finding that expedited discovery would not be a burden on Defendants when the inquiry could be conducted during regular business hours and the information sought would have to be provided during the litigation). Lastly, the discovery requests are being made at earliest possible time available to Plaintiff, so the fifth factor also cuts in favor of expedited discovery.

## VIII.  <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant its Application for a Temporary Restraining Order, an Order to Show Cause Why a Preliminary Injunction Should not Issue, and an Order for Expedited Discovery.

Dated: July 1, 2021             **NORTON ROSE FULBRIGHT US LLP**

By   */s/ Brian A. Sun*
BRIAN A. SUN
PHILLIP R. DI TULLIO
Attorneys for Plaintiff
THE RONALD REAGAN PRESIDENTIAL
FOUNDATION AND INSTITUTE

DOCUMENT PREPARED
ON RECYCLED PAPER